GRANT, et al. *v.* SOUTHERN SOLVENTS AND CHEMICAL CORPORATION

No. 42291 April 9, 1962 139 So. 2d 657

*Floyd & Holleman,* Gulfport, for appellants.

*Morse & Morse,* Gulfport, for appellee.

ETHRIDGE, J.

This case involves the interpretation of a contract allegedly to answer for the debt of another. The suit was brought in the County Court of Harrison County by Southern Solvents and Chemical Corporation (Southern Solvents), appellee, against William D. Grant and Emile Khail, appellants. The county court rendered judgment, based upon a jury verdict, for plaintiff, Southern Solvents, against the defendants, Grant and Khail, in the amount of $575.94. The circuit court affirmed, and defendants have appealed here.

L. P. Burton, of New York, was the president and principal stockholder of Burton Marine Chemical Corporation of Mississippi (called Burton Marine), of Gulfport, Mississippi, engaged in the business of mixing and selling marine chemicals. Grant started working on a salary for Burton Marine in the early part of 1958, and continued until September 18, 1958. L. P. Burton decided to return to New York. He and Grant agreed that Grant would manage Burton Marine and would receive eighty per cent of the net profits, with twenty per cent going to Burton. Grant managed the business from September 18 to November 13, 1958. It was a small, one-man operation, with Grant mixing the chemicals, selling and distributing them.

During this period Grant purchased chemical supplies for use in Burton Marine's business, including some from Southern Solvents. Apparently Burton was in Europe during part of this interim period of Grant's management of the business. When he returned, he was

dissatisfied with the way the business was being operated: It was not making any money. Grant had closed the bank account of Burton Marine and changed it to Grant Chemical Company. Payments of certain invoices to Burton Marine were being deposited in that account.

Because of his concern about Grant's management of Burton Marine for this period, Burton decided to close up and cease the operations of Burton Marine.

Defendant Emile Khail is the father-in-law of Grant, and apparently a financially responsible citizen in Harrison County. He desired to help his son-in-law. Burton wanted Khail to sign with Grant an agreement terminating Grant's management of the company. These parties met in the office of Burton's attorney, and, to carry out the agreement, Grant and Khail signed a letter, dated November 13, 1958, addressed to Burton Marine, upon which this action is based. It recited that during the months of September, October and through November 13, Grant and Khail assumed certain responsibilities and duties relating to the operation of Burton Marine, and further stated:

" . . . As a result thereof, certain debts have accrued and certain checks have been issued which should be repaid to Burton Marine Corporation. The undersigned hereby covenant and agree to assume full and complete responsibility for the following:

"1: Within five (5) days from the date here, to ship freight prepaid to Burton Marine Corporation of New York, the inventory and equipment of the Mississippi Company.

"2: To have prepared immediately at our expense, an audit of Burton Marine Corporation of Mississippi for the period during which operation has been conducted by the undersigned.

"3: To repay to Burton Marine Corporation all sums which may be shown as due by said audit and

to pay such commissions and other indebtednesses which are reflected by the audit.''

Finally, Grant and Khail agreed to deliver to the offices of Burton's attorney all correspondence and checks ''payable either to Burton Marine Corporation or to Grant Chemical Company'', to cease all operations of Grant Chemical Company and Burton Marine, and not to use any of the formulas or contacts they had acquired during association with the company.

Pursuant to paragraph 2 of this agreement, Risley, an accountant, prepared an audit of Burton Marine for the period during which Grant had operated and managed the company, namely September through November 13, 1958. Under this final audit, Grant owed Burton about $36.12. Afterwards Risley wrote Khail enclosing his findings, and stating that it had been made on two assumptions: Burton would collect the accounts receivable, and ''your interests'' (Khail and Grant) will pay all (accounts) payables plus his fee for the audit. Neither Khail nor Grant ever replied to this letter. However, Risley testified that he assumed Burton Marine would pay the accounts payable.

Khail and Grant denied there was ever anything said or any agreement by which they would pay the bills incurred by Burton Marine during the period of Grant's management of the concern. They contended the agreement provided and was intended to provide only that they would pay Burton Marine for any debts which they owed Burton Marine as might be reflected in the audit; they were not to pay any debts incurred by Burton Marine to third persons during the period of Grant's management. Over plaintiff's objections, the trial court permitted defendants and the attorney who prepared the letter to testify as to the circumstances and their understanding of the agreement.

As they agreed, Khail and Grant shipped to New York the inventory and equipment of Burton Marine,

paid the accountant for the audit, delivered to Burton's attorney all correspondence and checks, and terminated the operations of Grant Chemical Company and Burton Marine. Subsequently, this action was brought by Southern Solvents, which sold chemicals to Burton Marine during the two-month period of Grant's operation of the company. There is no evidence indicating that Burton Marine did not get the benefit of these chemicals purchased for its account; nor is there any evidence that Grant wrongfully used, for his own purposes, these chemicals, which he had purchased for Burton Marine.

Appellee contends that the agreement of November 13 means that Burton Marine was to receive all accounts receivable, but that Grant and Khail were to pay all of its accounts payable. The audit of Risley shows to the contrary. In fact, he testified his audit was made on the assumption that Burton Marine would furnish the money to Khail and Grant to pay the accounts payable of the corporation, and that the audit bears out that conclusion. We agree. The audit was designed by the parties to consummate a complete settlement between the parties as to all transactions arising out of Grant's management of the company for two months.

The letter of November 13, read in its entirety and in the light of the circumstances at that time, clearly reflects, we think, that the intention of the parties was to require appellants to repay to Burton Marine all sums which might be shown to be due by the audit, and to pay commissions and other indebtednesses which they owed Burton Marine, and which might be reflected by the audit. The phrase ''other indebtednesses which are reflected by the audit'' does not state and was not intended to mean that Khail and Grant would pay all accounts payable incurred by Burton Marine during this period. Burton was concerned with whether the company suffered any financial injuries because of Grant's management. The agreement was to adjust that issue,

to pay Burton Marine for any moneys, commissions, accounts or indebtednesses which an audit of the business, during the time Grant managed it, would show was owing to it by Grant. Appellee's contention, that Khail and Grant agreed to assume all debts of Burton Marine incurred during this period to third persons, including all accounts payable, is unreasonable and not consistent with the terms of the letter of November 13. Both it and the audit reflect the contrary.

 █ In short, we hold that the letter of agreement of November 13 was designed to adjust the respective rights, duties and responsibilities of appellants and Burton. It did not obligate appellants to pay the accounts payable of Burton Marine, and therefore did not include the accounts payable to appellee, Southern Solvents. To warrant application of such an unusual obligation, as appellees urge, would require more specific and definite language than the November 13 letter contained. The audit fully accounted for and adjusted the rights of the parties among themselves, as it was manifestly intended to do. Hence the trial court erred in denying appellants' requested peremptory instruction. The judgments of the circuit and county courts are reversed. Judgment is rendered here for appellants, dismissing with prejudice the declaration of appellee, Southern Solvents.

Reversed and judgment rendered here for appellants.

*McGehee, C. J.,* and *Kyle, Gillespie,* and *Rodgers, JJ.,* concur.